■ In the Matter of MARTHA A. and Others, Children Alleged to be Abused. NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, Appellant; DIANA C., Respondent. [905 NYS2d 582]—

Order, Family Court, New York County (Jody Adams, J.), entered on or about February 3, 2010, which, inter alia, granted respondent mother's application pursuant to Family Court Act § 1028 for the return of the children Martha A., Rae Leann A., and Raymond A., unanimously reversed, on the law, without costs or disbursements, the application denied, and the matter remitted to the Family Court, New York County for further proceedings consistent herewith.

The mother has five children, Jennifer, Jessica, Rae Leann, Martha, and Raymond, ages 19, 14, 12, 10, and 8, respectively. On January 6, 2010, the Administration for Children's Services (ACS) filed petitions against the mother alleging that by failing to protect Rae Leann from sexual abuse by Jayson Maldonado, age 25, the mother abused Rae Leann and derivatively abused Jessica, Martha and Raymond. ACS's initial application to remand the children was denied, with the court paroling them to the mother, subject to her enforcing a temporary order of protection directing Maldonado to stay away from the children, ensuring that the children continue to receive therapeutic services and cooperating with Child Advocacy Center recommendations.

On January 20, 2010, ACS filed amended petitions alleging that the mother had a pattern of allowing her children to be sexually abused. This included allegations that in addition to Rae Leann being sexually abused by Maldonado, while living

with the mother, Jessica was sexually abused by her stepfather; Rae Leann and Martha were sexually abused by a family friend; Rae Leann became sexually active at age nine and was seen in a video performing a sexual act on a 14-year-old boy; and Jennifer, at age 14, was statutorily raped and impregnated by Maldonado. The amended petition further alleged that the mother failed to report the statutory rape of Jennifer and continued to maintain a relationship with Maldonado, allowing him to sleep over in her apartment. The Family Court then issued an order authorizing ACS to remove the children from the home immediately and the mother timely applied for their return pursuant to Family Court Act § 1028.

Under Family Court Act § 1028, "[t]he court *must do more* than identify the existence of a risk of serious harm. Rather, a court must weigh, in the factual setting before it, whether the imminent risk to the child can be mitigated by reasonable efforts to avoid removal. It must balance that risk against the harm removal might bring, and it must determine factually which course is in the child's best interests" (*Nicholson v Scoppetta*, 3 NY3d 357, 378 [2004]).

"In order to justify a finding of imminent risk to life or health, the agency need not prove that the child has suffered actual injury. Rather, the court engages in a fact-intensive inquiry to determine whether the child's emotional health is at risk" (*id.* at 377 [citation omitted]). In making the determination that imminent risk exists, it is "sufficient if the officials have persuasive evidence of serious ongoing abuse and, based upon the best investigation reasonably possible under the circumstances, have reason to fear imminent recurrence" (*id.* at 381 [citations omitted]).*

At the Family Court Act § 1028 hearing, the testimony of a child protective specialist assigned to the case showed that the mother, knowing that Maldonado had statutorily raped and twice impregnated Jennifer when she was 14, and that Rae Leann was sexually active and had a "crush" on Maldonado, nevertheless allowed Maldonado, who resides in the same building, to sleep over in her apartment in the same bedroom as Rae Leann. When the mother noticed a hickey on Rae Leann's neck, she asked Jessica to speak to her. Although Jessica reported that Rae Leann admitted that she had sex with Maldonado, and that Maldonado had also inappropriately touched Jessica and

---

* Although the Court of Appeals articulated this in reference to removals under section 1024, it is applicable in section 1028 determinations (*see Matter of Abraham P.*, 21 Misc 3d 1144[A], 2008 NY Slip Op 52498[U], *11 [Fam Ct, Kings County 2008]).

asked for sex, the mother told Jessica to keep quiet and that she would handle it. However, the mother never contacted the police and did not seek medical treatment for Rae Leann even though she knew that Maldonado was rumored to have a sexually transmitted disease. The mother allegedly told caseworkers that she did not know what to do and did not see the point in contacting the police because while Maldonado would be arrested, the "child's head would still be messed up." It was not until Jessica reported the incident that ACS became involved and the mother's cooperation began.

Jessica also told caseworkers that Maldonado visited the mother's apartment twice a week and that he drank and smoked marijuana. During July 2009, Jessica smoked marijuana with Maldonado while the mother was in the apartment. The mother claimed that Maldonado rarely drank, but sometime in August 2009 she allowed him to sleep over even though he smelled of alcohol. Further, the mother stated that she had a good relationship with Maldonado and admittedly had sex with him on at least one occasion. When asked why she allowed men to sleep in the home given the history of her children being sexually abused, the mother allegedly responded that she did not want the children to grow up hating men and that she did not think Maldonado would abuse a child because she trusted him.

This evidence of the repeated sexual abuse of the children while in the mother's care, the mother's allowing Maldonado to sleep over in the same bedroom as the children despite the knowledge that he previously statutorily raped and twice impregnated Jennifer, the mother's failure to report the statutory rape of Jennifer or the sexual abuse of Rae Leann to the authorities, and the mother having a sexual relationship with Maldonado after the statutory rape of Jennifer, shows such poor judgment and flawed understanding of the mother's role as a caretaker over a period of years as to place the children at risk of imminent harm (see Matter of Daniel W., 37 AD3d 842 [2007]; Matter of Christina Z., 284 AD2d 210 [2001]). Accordingly, applying the Scoppetta balancing test, notwithstanding the mother's recent cooperation and the temporary order of protection, we find that the best interests of the subject children will be served by continuing their removal until additional facts are adduced at a full fact-finding hearing (see Matter of Rosy S., 54 AD3d 377 [2008]; see also Matter of Gabriel James M., 59 AD3d 448 [2009]). Concur—Andrias, J.P., Saxe, Sweeney, Nardelli and Catterson, JJ.